```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/16/2025
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL MCWILLIAMS,

                Plaintiff,

-against-

KRISTEN MONROE, ALLISON VENTIMILLA, KELLEY THOMSEN, DANIELLE KWAK, COURTLAND COUNTY, and ANTHONY CHRISTIE

                Defendants.

23-cv-3414 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

    *Pro se* Plaintiff Michael McWilliams ("Plaintiff") initiated this action on January 10, 2023, alleging deprivation of rights under 42 U.S.C. § 1983 ("Section 1983") claiming violations of the 4th Amendment, 5th Amendment, 6th Amendment, 14th Amendment, as well as multiple state law claims against Defendants Kristen Monroe, Allison Veintimilla, Kelley Thomsen, Danielle Kwak, and Cortland County ("Cortland Defendants") and Defendant Anthony Christie ("Christie") (all together, the "Defendants").

    Presently before the Court are the Cortland Defendants and Christie's Motions to Dismiss Plaintiff's claims pursuant to Federal Rules of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") and the Cortland Defendants also move to strike motion to strike pursuant to Federal Rules of Civil Procedure 12(f) ("Rule 12(f)") portions of the allegations contained in Plaintiff's pleadings. For the following reasons, the motions are GRANTED with prejudice.

## BACKGROUND

    The following facts are derived from the First Amended Complaint and are taken as true and constructed in the light most favorable to the Plaintiff at this stage.

1

Plaintiff is a parent of several children. (Am. Compl. ¶ 29.) Plaintiff successfully adopted and raised two children, identified in the Amended Complaint as SB and CM. (*Id.* ¶ 31.) Plaintiff first resided in Tully, New York, but moved to Cortland, New York in anticipation of adopting a third child, BH. (*Id.* ¶ 32.) Preparing for BH's arrival, Plaintiff, Eugenio Roman ("Roman"), CM and SB began to set up Plaintiff's Cortland home. (*Id.*)

Plaintiff asked SB to assist with such preparation; SB refused to do so, and Plaintiff disciplined SB by taking away SB's cellphone which Plaintiff had provided him. (*Id.*) SB sought to regain his cellphone, asking Plaintiff if he could clean the front yard with CM. (*Id.* ¶ 33.) Plaintiff agreed, after which SB left the property. (*Id.*) CM went inside of the house and told Plaintiff that SB left the property, at which point Plaintiff, Roman, and CM drove around their neighborhood looking for CM. (*Id.*)

Plaintiff, after forty-five minutes of searching for SB, decided to contact the police to request their assistance in finding SB. (*Id.* ¶ 34.) Plaintiff saw two police officers at 6 Argyle Place, Cortland, New York and approached the officers, informing them of SB's behavior. (*Id.*) Sergeant Brendan J. Byrnes ("Byrnes") of the Cortland City Police Department, told the Plaintiff that SB was found, and that SB alleged Plaintiff was physically abusing him. (*Id.* ¶ 35.) Officer Kristyn V. Drake ("Drake") of the Cortland City Police Department specifically advised Byrne of such allegations. (*Id.*)

Plaintiff denied such allegations and Roman provided a statement to Byrnes, stating that Plaintiff did not physically discipline SB. (*Id.* ¶¶ 36-37.) Plaintiff admitted to Byrnes that he "restrained" SB on April 6, 2022, telling SB he loved him, and that SB needed to stop being aggressive. (*Id.* ¶ 39.) Plaintiff provided Byrnes with his license and registration. (*Id.* ¶ 40.)

Byrnes requested to speak with CM alone, which Plaintiff allowed. (*Id*. ¶ 41.) Byrnes then reported that CM stated he felt safe in the residence with Plaintiff and that Plaintiff is not abusive. (*Id*.) After speaking with Roman, CM, and Plaintiff, Byrnes decided to inform Plaintiff of where he could locate SB and allowed Plaintiff to leave and retrieve SB, who was at the University Police Department ("UPD"). (*Id*.) When Plaintiff arrived at UPD, Plaintiff was questioned by the UPD. (*Id*. ¶ 43.) Plaintiff and Roman restated what they told Byrnes. (*Id*.) Thereafter, Plaintiff and Roman were taken to SB. (*Id*.) While Plaintiff spoke with SB, Cortland City Police Officer Keeler requested to speak with Plaintiff. (*Id*. ¶ 44.) Plaintiff gave Keeler his adoption agency's contact information, which Keeler contacted. (*Id*. ¶ 45.)

Keller told Plaintiff SB was required to undergo a psychiatric evaluation and that SB and Plaintiff would be transported by ambulance to Guthrie Cortland Medical Center ("GCMC"). (*Id*. ¶ 46.) The GCMC medical evaluations were conducted between 10:00 PM to 4:00 AM, April 9, 2022, to April 10, 2022. (*Id*. ¶ 48.) At GCMC, Drake completed her report, wherein she noted she did not find any evidence that corroborated SB's allegations of abuse. (*Id*. ¶ 49.) Drake contacted the Child Protective Services Mandated Report Hotline. (*Id*. ¶ 50.) Mental Health Therapist Jenni Toomey ("Toomey") assessed SB at GCMC, and reported that SB denied physical abuse, that SB thought Plaintiff's punishments and being required to do chores was abuse. (*Id*. 51.) Similarly, Doctor Graham Meyer assessed SB and did not find signs of abuse or neglect. (*Id*. ¶ 52.) Accordingly, at approximately 4:00 AM on April 10, 2022, SB was released to Plaintiff's custody. (*Id*. ¶ 53.) Plaintiff advised Lora Rogers ("Rogers"), SB's adoption specialist, of what transpired with SB. (*Id*. ¶ 54.) Rogers spoke with SB, who told Rogers that he was just angry due to Plaintiff taking away his cellphone. (*Id*.)

Thereafter, Plaintiff had his first interaction with the Cortland Child Protective Services ("CCPS"). (*Id.* ¶ 56.) Plaintiff received a call from Chelsea Carter ("Carter"), who worked for Cortland County Department of Social Services ("CDSS"). Carter advised Plaintiff that she was following up on Drake's report. (*Id* ¶ 57.)

Drake's report ultimately spurned the involvement of CCPS and CDSS and conducting their own investigations into the allegations of misconduct raised against Plaintiff. (*Id.* ¶¶ 57-58.) It is CCPS and CDSS's conduct over the course of this investigation that serves as the basis of Plaintiff's claims in the instant action. (*Id.*) Plaintiff avers that throughout the course of this investigation, the Cortland Defendants committed multiple violations of federal and state law. (*Id.* ¶¶ 295-297, 310-315, 316, 321, 331-335, 341-345, 348-350, 354-357, 364-367, 375-379).

Plaintiff also asserts that Defendant Christie was "complicit in the illegal actions" of the Cortland Defendants by stating sending an email wherein Christie stated that Westchester Child Protective Services were "available to follow" the directives of CCPS, once Plaintiff moved to Westchester. (*Id.* ¶¶ 99, 383.)

**PROCEDURAL HISTORY**

On April 24, 2023, Plaintiff commenced this action against the Defendants in his Complaint. (ECF No. 1). On August 7, 2023, Plaintiff filed his First Amended Complaint ("Am. Compl.") (ECF No. 6). The Am Complaint is the operative complaint. On June 20, 2024, Defendants Kristen Monroe, Allison Veintimilla, Kelley Thomsen, Danielle Kwak, and Cortland County filed their motion to dismiss and memorandum of law in support of their motion ("Cortland Mot.") (ECF No. 44), and Defendant Anthony Christie filed his motion to dismiss and memorandum of law in support ("Christie Mot.") (ECF Nos. 45 and 47). Plaintiff filed his memoranda of law in opposition to Defendant Christie's motion to dismiss on June 21, 2024 (ECF

4

No. 50), and Defendant Christie filed his reply in support of his motion to dismiss on June 20, 2024 (ECF No. 49).

**LEGAL STANDARD**

A. Rule 12(b)(6)

Under Rule 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). The Second Circuit "deem[s] a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . and documents that plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rotham v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (internal citations omitted). The critical inquiry is whether the Plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678

### B. Pro Se Pleading Standard

Where a litigant is pro se, the Court is empowered to consider "new facts raised in opposition papers to the extent they are consistent with the complaint, treating the new factual allegations as amending the original complaint." Davila v. Lang, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018). A Court may consider "new claims appearing for the first time in the briefing 'if the claims could have been asserted based on the facts alleged in the complaint." Vlad-Berindan v.MTA New York City Transit, No. 14-cv-675, 2014 WL 6982929, at *5 (S.D.N.Y.2014) (citing Rosado v. Herard, No. 12-cv-8943, 2013 WL 6170631, at *3 (S.D.N.Y. 2013). Courts are to read a pro se litigant's papers "liberally" and "interpret them to raise the strongest argument that they suggest." Burgos v. Hopkins, 14 F.3d 787, 791 (2d Cir. 1994).

### C. Section 1983

Section 1983 provides, in relevant part, that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured." Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). To assert a claim under Section 1983, a plaintiff must allege "(1) the challenged conduct was attributable to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York*, No. 09-CV-5446(SHS), 2013 WL 1803896, at *2 (S.D.N.Y. April 25, 2013); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). Therefore, a Section 1983 claim has two essential elements: (1)

6

the defendant acted under color of state law, and (2) as a result of the defendant's actions, the plaintiff suffered a denial of his federal statutory rights, or his constitutional rights or privileges. See Annis v. County of Westchester, 136 F.3d 239, 245 (2d Cir. 1998); Quinn v. Nassau Cty. Police Dep't, 53 F. Supp. 2d 347, 354 (E.D.N.Y. 1999) (Section 1983 "furnishes a cause of action for the violation of federal rights created by the Constitution.")

### D. Rule 12(f)

Rule 12(f) provides in relevant part that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The purpose of Rule 12(f) is to create a clear mechanism for the court to save time and expense by eliminating certain items from pleadings when the items clearly lack merit, and also for the court to dispose of irrelevant allegations. *See Operating Eng'rs Local 324 Health Care Plan v. G & W Constr. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015) ("The function of the motion is to 'avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with' them early in the case."). In considering whether a claim is immaterial for the purposes of a motion to strike, "[a]n allegation is 'impertinent' or 'immaterial' when it is neither responsive nor relevant to the issues involved in the action." *Anderson v. Davis Polk & Wardwell, LLP*, 850 F. Supp. 2d 392, 416 (S.D.N.Y. 2012). "Thus, to prevail on a Rule 12(f) motion to strike, the movant must show '(1) no evidence in support of the allegations would be admissible; (2) the allegations have no bearing on the relevant issues; and (3) permitting the allegations to stand would result in prejudice to the movant.'" *Lynch v. Southampton Animal Shelter Found., Inc.*, 278 F.R.D. 55, 63 (E.D.N.Y. 2011) (quoting *Roe v. City of New York*, 151 F. Supp. 2d 495, 510 (S.D.N.Y. 2001)).

## DISCUSSION

### A. Res Judicata

Under both New York law and federal law, the doctrine of *res judicata,* or claim preclusion, provides that "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie,* 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981). The doctrine stands for the proposition that once a final judgment has been entered on the merits of a case, that judgment will bar any subsequent litigation by the same parties or those in privity with them concerning "the transaction, or series of connected transactions, out of which the [first] action arose." *Restatement (Second) of Judgments* § 24(1) (1982).

"To prove the affirmative defense" of *res judicata*, a party "must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; and (3) the claims asserted in the subsequent action were or could have been raised in the prior action." *Greco v. Local.com Corp.*, 806 F. Supp. 2d 653, 657 (S.D.N.Y. 2011). "To determine whether a case has been determined on the merits, a court considers, among other factors, whether the court's opinion "suggest reliance upon procedural grounds rather than a determination on the merits." *Cotto v. Herbert*, 331 F.3d 217, 230 (2d Cir. 2003) (internal citations omitted).

Here, in raising the defense of *res judicata*, the Cortland Defendants cite to three different cases initiated by Plaintiff: *McWilliams v. Thomsen*, Westchester Cnty. Sup. Ct., Index No. 58549/2023 ("Westchester action"), *McWilliams v. Sandy, et al*, Index No. EF23-152 (Cortland Cnty. Sup. Ct.) ("Cortland action"), and *McWilliams v. Sandy*, et al*, civ. Case no. 5:23-cv-728

(N.D.N.Y.) ("Northern action"). The latter two cases are insufficient to invoke *res judicata*; neither ended in a final judgment on the merits.

As to the Cortland action, the Court "dismissed the proceedings on grounds that the court lacked authority to compel the actions demanded" by Plaintiff. (Cortland Mot. p. 12.) Regarding the Northern action, the case was dismissed after Plaintiff "declined to pay[] the filing fee" when his application to proceed *in forma pauperis* was denied. (*Id*. p. 13.) Both cases evidently ended on grounds that were procedural: a lack of a court authority and failure to pay a filing fee are not substantive conclusions going towards the veracity of Plaintiff's claims. Neither can be considered court decisions issued pursuant to a judgment on the merits. Thus, said cases are not sufficient to serve as a basis for the application of *res judicata*. *Cotto*, 331 F.3d 217.

Plaintiff's action initiated and adjudicated in Westchester Supreme Court, however, justifies the application of *res judicata* as to Plaintiff's claims against the Cortland Defendants. The Court considers the relevant factors in turn.

To determine "whether a state court has disposed of a claim on the merits, [the Court] consider[s]: "(1) what the state courts have done in similar cases; (2) whether the history of the case suggests the state court was aware of any ground for not adjudicating the case on the merits; and (3) whether the state court's opinion suggests reliance upon procedural grounds rather than a determination on the merits." *Aparicio v. Artuz*, 269 F.3d 78, 94 (2d Cir. 2001).

Here, such criteria point in favor of finding that the Westchester action was adjudicated on the merits. In the Westchester action, the state court was charged with determining whether Thomsen, a supervisor and caseworker for Cortland County Child Protective Services, was entitled to qualified immunity for his conduct during the course of investigating reports of child abuse purportedly involving Plaintiff. The court therein found Thomsen's arguments persuasive that he

9

was "immune from liability pursuant to Social Services Law 419" which "affords [qualified] immunity to those participating in the investigation of child abuse allegations as long as they act within the scope of their employment and do not engage in willful misconduct or gross negligence." (Courtland Mot., Ex. B1, p. 92-93.) The court ultimately concluded that Thomsen "was entitled to dismissal on grounds of immunity under Social Services Law § 419." (*Id*. p. 92.) Whether a defendant is entitled to immunity pursuant to Social Services Law § 419 is routinely addressed by courts that ultimately grant or deny such immunity. *See Grabowski v. Orange Cnty.,* 196 N.Y.S.3d 113 (2023); *see also Gentile v. Wegman,* 179 N.Y.S.3d 568 (2023); *P.A. v. New York & Presbyterian Hosp.*, 211 A.D.3d 482, 181 N.Y.S.3d 16 (2022); *Peek v. Duanesburg Cent. Sch. Dist.*, 2023 WL 8255014 (N.D.N.Y. Nov. 29, 2023). Thus, the court's resolution in the Westchester action was in line with what courts have done in similar cases at the state and federal level.

Additionally, the history of the case does not indicate the Westchester action state court was aware of any grounds for not adjudicating the case on the merits; instead, the record only evidences that the Westchester action state court resolved the case on substantive grounds, instead of on procedural grounds. Indeed, the Westchester action state court considered the totality of Plaintiff's "voluminous admissions" and analyzed whether Thomsen's conduct was indicated of willful misconduct or gross negligence in such a way that would preclude Social Services Law § 419 immunity. (Cortland Mot., Ex. B1, p. 93.) Therefore, the Court finds that the Westchester action was adjudicated on the merits.

As to whether the Westchester action involved the Plaintiff or those in privity with the Plaintiff, the Westchester action was prosecuted by the Plaintiff, clearly satisfying the second factor of the *res judicata* analysis.

Finally, regarding the third factor of the *res judicata* analysis, the Court finds that the claims Plaintiff seeks to bring before this Court could have been raised in the Westchester action. Whether a claim could have been raised in a previous action turns on "whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *N.L.R.B. v. United Techs. Corp.*, 706 F.2d 1254, 1260 (2d Cir. 1983).

The basis of the Westchester action was the investigation conducted by the Cortland County government through its officials into allegations of child abuse raised against Plaintiff. (Cortland Mot., Ex. B1, p. 91.) Likewise, the basis of the claims raised in the instant action before the Court arises from the Cortland County government's investigations through its officials into allegations of child abuse against Plaintiff. (Am. Compl. ¶¶ 54, 58, 67, 106, 110, 155, 170, 180, 195, 214, 236, 263-264, 271, 277.) Thus, the "same transaction or connected series of transactions" are at issue between the Westchester action and the instant action. *United Techs. Corp.*, 706 F.2d 1254.

The Westchester action sought redress for claims against Thomsen for "purported defamatory statements contained in written reports alleging . . . that plaintiff had abused his children." (Cortland Mot., Ex. B1, p. 90.) In the instant action, Plaintiff brings state and federal law claims against the Cortland Defendants, all of which are inextricably tied to and turn on conduct by Cortland County's government while investigating allegations of child abuse made against Plaintiff. (Am. Compl. ¶¶ 297, 314, 316, 329, 342, 354, 366, 371, 375, 379.) Therefore, while the elements of the claims, of course, differ, the underlying evidence needed to prove the claims turn on the same evidence – the conduct of Cortland County's government throughout its investigations into Plaintiff.

Finally, the facts essential to the instant action are those essential to the first action. The "factual predicates" of the Westchester action and the instant action are "essentially the same" as they "involve the same transaction" – the Cortland County government's investigation into Plaintiff. *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 39 (2d Cir. 1992). While new claims are raised in the instant action, for the purposes of the *res judicata* analysis, "[i]t is the identity of facts surrounding the occurrence which constitutes the cause of action, not the legal theory upon which [Plaintiff] chose to frame [his] complaint." *Id*. Thus, "whatever legal theory is [now] advanced" by Plaintiff, when the factual predicate upon which [Plaintiff's] claims are based are substantially identical, the claims are deemed to be duplicative for the purposes of *res judicata*." *Berlitz Sch. of Languages of Am., Inc. v. Everest House*, 619 F.2d 211, 215 (2d Cir. 1980). Courts have repeatedly stressed that "[e]ven claims based upon different legal theories are barred provided they arise from the same transaction or occurrence." *L–Tec Elecs. Corp. v. Cougar Elec. Org., Inc.,* 198 F.3d 85, 88 (2d Cir.1999). Accordingly, while Plaintiff may advance new claims in the instant action, the "factual predicate upon which [Plaintiff's] claims are based are substantially identical" to the Westchester action, and therefore "the claims [of the instant action] are deemed duplicative for the purposes of *res judicata*." *Id*.

To be sure, the facts in the instant action are not entirely the same as the facts necessary for the Westchester action. Separate claims naturally entail different facts needed to successfully satisfy a given claim's elements. However, this does not serve as a hindrance to the application of *res judicata*; courts in this Circuit "consistently hold that the facts essential to the barred suit need not be the same as the facts that were necessary to the first suit. It is instead enough that 'the facts *essential to the second* were [already] present in the first.'" *Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 110 (2d Cir. 2000) (quoting *Computer Assoc's Int'l, Inc. v. Altai, Inc.*, 126 F.3d 365, 369

(2d Cir. 1997)). Here, "no matter what legal theory drives [Plaintiff's] present action, the facts essential to [Plaintiff]'s previous action" – the Cortland County government's investigation into Plaintiff – "would sit at the core [of the present action's federal and state law claims]." *Mezzacappa Bros., Inc. v. City of New York*, 2003 WL 22801429 (S.D.N.Y. Nov. 24, 2003). Accordingly, the Court must conclude that the facts essential to the instant action were present in the Westchester action, further counseling the application of *res judicata*.

Taken together, after considering the aforementioned criteria and precedent for whether the affirmative defense of *res judicata* has been raised, the Court must conclude that Plaintiff's federal and state law claims against the Cortland Defendants are barred by *res judicata*. Plaintiff's "present suit is merely an attempt to raise an additional theory [of redress], not asserted in the prior suit, and is therefore barred by the doctrine of *res judicata*." *Shekhem'El-Bey v. New York*, 464 F. Supp. 2d 329, 335 (S.D.N.Y. 2006); *see also* Bey v. City of New York, 2010 WL 3910231 (S.D.N.Y. Sept. 21, 2010), *aff'd*, 454 F. App'x 1 (2d Cir. 2011) (same). Thus, the Cortland Defendants' motion to dismiss is granted in its entirety against Plaintiff's First, Second, Third, Fourth, Fifth, Sixth and Seventh Causes of Action. Said claims are deemed dismissed with prejudice.

### B. Cortland Defendant's Motion to Strike

Given that the Court has dismissed with prejudice Plaintiff's claims against the Cortland Defendants, the Cortland Defendants' motion to strike is denied as moot.

### C. Plaintiff's Section 1983 Claims and State Law Claims Against Christie

In Plaintiff's Eighth Cause of Action, Plaintiff attempts to assert federal and state law claims against Christie upon the theory that "Christie aided and abetted the tortious actions of" the Cortland Defendants and therefore is "equally liable." (Am. Compl. ¶¶ 381, 390.) Because the Court has concluded that Plaintiff's First through Seventh Causes of Action are barred by *res*

13

*judicata*, and because the Plaintiff's Eighth Cause of Action against Christie relies entirely on Plaintiff's *res judicata* barred claims against the Cortland Defendants, the Court must grant Christie's motion to dismiss Plaintiff's Eighth Cause of Action. Said claim is similarly deemed dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, the Court GRANTS each of the Defendants' motions to dismiss Plaintiff's claims. Specifically, the Court grants Defendants Kristen Monroe, Allison Veintimilla, Kelley Thomsen, Danielle Kwak, and Cortland County's motion to dismiss in its entirety and grants Defendant Anthony Christie's motion to dismiss in its entirety. Each of Plaintiff's eight causes of action are dismissed with prejudice.

The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 44 and 45, to terminate the instant action, to mail a copy of this Opinion and Order to the *pro se* Plaintiff at the address listed on ECF and to show service on the docket.

Dated:   January 16, 2025                        SO ORDERED:
           White Plains, New York

                                                    NELSON S. ROMÁN
                                                   United States District Judge